UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIMOTHY MACDUFF, | * | Civil Action No. |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| | * | |
| | * | |
| SIMON MANAGEMENT ASSOCIATES II, LLC, | * | JUNE 1, 2020 |
| | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT

The plaintiff, Timothy MacDuff ("MacDuff" or "plaintiff"), by his counsel, Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, complaining of the defendant herein, respectfully alleges as follows:

## NATURE OF THE CLAIMS

1. This action is brought to remedy discrimination on the basis of disability in the terms and condition of employment and retaliation for opposition to unlawful practices, in violation of Americans with Disabilities Act, 42 U.S.C. 12101, *et seq.*, and various common law claims, and any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

2. The Plaintiff seeks monetary relief including, but not limited to: back pay, front pay, compensatory damages, attorney's fees and the costs of this action, and any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

## JURISDICTION AND VENUE

{!01989834.DOC; v.}                                          1

3. Jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. This action arises under Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and the Connecticut Fair Employment Practices Act ("CFEPA").

5. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) in that plaintiff, Timothy MacDuff resides in Connecticut, was employed by the defendant in Connecticut, his claims arose in this district, and substantial actions occurred in this district.

## EXHAUSTION OF REMEDIES

6. Timothy MacDuff filed a timely claim with the Connecticut Commission of Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission (EEOC).

7. The CHRO issued a Release of Jurisdiction April 7, 2020. (Exhibit A.)

8. The plaintiff has commenced this federal lawsuit within ninety (90) days of the plaintiff's receipt of the Notice of Right to Sue letter and as a result, the plaintiff has fully complied with the administrative pre-requisites of the ADA and all other applicable statutes.

9. All conditions precedent to this lawsuit have been fulfilled.

## PARTIES

10. The plaintiff, Timothy MacDuff, is a male resident of Connecticut who resides at 34 Briar Hill Road, Norwich, Connecticut.

11. The defendant, Simon Management Associates II, LLC ("Simon") is a Delaware corporation authorized to do business in Connecticut.

12. Simon operates numerous shopping locations in Connecticut, one of which is located at Clinton Crossing Premium Outlet, 20 Killingworth Turnpike, Clinton, Connecticut.

## FACTS

13. MacDuff began employment with Simon on May 21, 2018, as the Operations Director at Clinton Crossing Premium Outlets ("Clinton Crossing").

14. Simon employs at least 15 employees in the State of Connecticut.

15. Simon's web site describes it as "a global leader in the ownership of premier shopping, dining, entertainment and mixed-use destinations and an S&P 100 company (Simon Property Group, NYSE:SPG). Our properties across North America, Europe, and Asia provide community gathering places for millions of people every day and generate billions in annual sales."

16. On or about September 24, 2018, Simon hired a new General Manager, Nathan Ramos, at Clinton Crossing.

17. Nathan had no prior experience in a similar position.

18. On November 23, 2018, MacDuff received a written warning.

19. MacDuff suffers from Attention Deficit Disorder ("ADD") and usually has no issues in the workplace related to his disability.

20. However, the reasons for the written warning were directly related to his ADD.

21. MacDuff provided a written response to the warning explaining that the job involves juggling multiple tasks, daily cleaning tasks and maintenance issues, research and creation of complex, capital projects, compliance with SIMON corporate, Local,

State, Federal codes and guidelines, and being available to quickly respond to any Simon corporate inquiry for information.

22. Interruptions are common for the Operations Director.

23. MacDuff asked if he could start the workday early (6:30AM start) in order to have additional "quiet" time to focus on the capital projects.

24. Nathan refused that request despite the fact that other Operations Directors at Simon properties worked early schedules to create "quiet time."

25. The outcome was an "Action Plan" list of items that had to be performed by November 30, 2018.

26. If MacDuff failed to meet these objectives, he would receive a second written warning.

27. Most of the items involved specific tasks associated with capital projects, which MacDuff accomplished by the close of business on November 30, 2018.

28. Another requirement was to create a database to log and track cleaning and maintenance efforts, which he performed the day following the imposition of the Action Plan.

29. However, there were also three other subjective requirements: (1) meet all given deadlines; (2) respond immediately to company texts and calls; and (3) take full ownership of all aspects of his job.

30. Although MacDuff accomplished the objective goals set for him, and instead of accommodating his disability needs, Nathan continued to place more stress on MacDuff in terms of deadlines.

31. In multiple sequentially scheduled operations meetings, Nathan discussed capital projects and assigned more deadlines.

32. Nathan made a point of stressing that these are hard dates and that no additional time will be provided.

33. On January 16, 2019, MacDuff wrote to Kathrine Meehan, Simon's regional human resources point person, stating that he felt he was being discriminated against due to his disability and age.

34. MacDuff explained that he had feared retaliation if he raised these issues from the past.

35. In that letter, he requested a company laptop computer, to allow him to work when he was not in the office.

36. MacDuff disclosed that he works best in environments with minimal distractions and had taken it upon himself to re-arrange some furniture and his computer within his office space to reduce visual distractions.

37. He also stated that he had a neurological learning disorder that intensifies under extreme stress such as, the threat of job loss.

38. Ms. Meehan responded by sending MacDuff a company form designed to record an employee's request for reasonable accommodations.

39. On February 5, 2019, MacDuff returned the form, which was purportedly forwarded to the "benefits department" for review.

40. On February 12, 2019, MacDuff's physician, Dr. Jorge Dabdoub, provided a letter specifically regarding his ADD and indicating that MacDuff would benefit from: (1) reductions in audible and visual distractions; (2) being able to take small breaks

between tasks; (3) the use of visual aids such as maps, diagrams, and lists; and (4) the aid of a computer to stay connected while on breaks.

41. MacDuff provided that letter to Ms. Meehan.

42. MacDuff's elderly mother suffered a stroke on February 15, 2019.

43. She passed away on February 23, 2019, and the funeral took place on March 1, 2019.

44. MacDuff was out of the office dealing with the family situation until March 4, 2019.

45. On February 26, 2019, while he was out due to his mother's death, the benefits department rejected the request for a laptop, stating "[a]s for your laptop request, based on the essential functions of your role, and given the current set-up you are afforded at Simon, we cannot honor your laptop request."

46. Following his return to work, on March 11, 2019, MacDuff was given a final written warning.

47. Nathan stated that due to his Mother's end of life event, Simon placed everything "on the back burner" while the medical situation existed.

48. The reasons stated for the final written warning were: (1) missing some "hard dates"; and (2) missing some reporting deadlines.

49. Neither of the stated reasons was accurate.

50. On April 1, 2019, Dr. Dabdoub authored a second letter in support of MacDuff's reiterated request for accommodations.

51. That letter made the following accommodation suggestions: (1) a laptop computer; (2) restructuring of the approach to deadlines; (3) weekly meetings to discuss

goals, projects and expectations; (4) adjustment to the method of supervision; and (5) employment of a clear performance plan with attainable goals and benchmarks.

52. That letter was provided to the benefits department in support of a request for those accommodations.

53. On April 3, 2019, the benefits department again refused the laptop request.

54. Simon did not respond to my other accommodation requests.

55. On April 12, 2019, MacDuff suffered visual auras driving home from Clinton Crossing to run an errand and then went to his doctor.

56. MacDuff's doctor recommended some diagnostic tests and wrote a note excusing him from work until 4-22-19.

57. MacDuff was terminated by the Regional Director of Operations on April 23, 2019.

58. MacDuff's termination arose directly from his disability and in retaliation for his continued requests for accommodations.

## COUNT ONE
### Discrimination in Violation of
### Americans with Disabilities Act, 42 U.S.C. § 12101

59. MacDuff re-alleges and incorporates by reference Paragraphs 1 through 58 as if fully stated herein.

60. By the above acts and practices, Simon has discriminated against the plaintiff on the basis of his disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, by terminating his employment while he was out of work on FMLA; by failing to offer MacDuff an alternative position, even though he had been given

{!01989834.DOC; v.}                                7

clearance to return to work with no restrictions; and by forcing MacDuff to apply for open positions as a new applicant to be considered with other outside candidates, and to begin the employment process all over again, even though he was qualified for said open positions and other employees, who were also laid off, were offered similar positions within the company and did not have their employment terminated and did not have to re-interview or re-engage in the hiring process.

61. MacDuff has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

## COUNT TWO
### Retaliation in Violation of
### Americans with Disabilities Act 42 U.S.C. 12101

62. MacDuff re-alleges and incorporates by reference Paragraphs 1 through 58 as if fully stated herein.

63. By terminating MacDuff, Simon retaliated against him for the disabilities for which he suffered, and was out of work on FMLA.

64. As a direct and proximate result of the conduct and acts of the defendant in violation of the Americans with Disabilities Act, the plaintiff has suffered and will continue to suffer irreparable injury, damage to his career and reputation, monetary and/or economic harm, including, but not limited to: loss of past and future income, wages, compensation, seniority, tenure and other benefits of employment, as well as, emotional distress and physical pain and suffering, for which he is entitled to an award of monetary damages and other equitable relief.

65. Simon engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

66. MacDuff has incurred attorney's fees in pursuit of these claims.

## COUNT THREE
### Discrimination in Violation of the
### Connecticut Fair Employment Practices Act

67. MacDuff re-alleges and incorporates by reference Paragraphs 1 through 58 as if fully stated herein.

68. By the above acts and practices, Simon has discriminated against the plaintiff on the basis of his disabilities in violation of the Connecticut Fair Employment Practice Act, by failing to provide reasonable accommodations and terminating his employment.

69. MacDuff has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

## COUNT FOUR
### Retaliation in Violation of the
### Connecticut Fair Employment Practices Act

70. MacDuff re-alleges and incorporates by reference Paragraphs 1 through 58 as if fully stated herein.

71. By terminating MacDuff, Simon retaliated against him for requesting reasonable accommodations for the disabilities for which he suffered.

72. As a direct and proximate result of the conduct and acts of the defendant in violation of the Connecticut Fair Employment Practices Act, the plaintiff has suffered

and will continue to suffer irreparable injury, damage to his career and reputation, monetary and/or economic harm, including, but not limited to: loss of past and future income, wages, compensation, seniority, tenure and other benefits of employment, as well as, emotional distress and physical pain and suffering, for which he is entitled to an award of monetary damages and other equitable relief.

73. Simon engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

74. MacDuff has incurred attorney's fees in pursuit of these claims.

## COUNT FIVE
### Negligent Infliction of Emotional Distress

75. MacDuff re-alleges and incorporates by reference Paragraphs 1 through 58 as if fully stated.

76. Defendant knew or should have known that its conduct in subjecting the plaintiff to a hostile work environment an unreasonable risk of causing severe emotional distress to the plaintiff and that such distress might result in illness or bodily harm.

77. MacDuff's emotional distress was foreseeable and reasonable in light of the Defendant's conduct.

78. MacDuff's emotional distress was severe enough that it caused illness for which MacDuff sought medical treatment.

79. Simon's conduct was the cause of MacDuff's distress.

80. As a result of the defendant's acts, the plaintiff has suffered severe emotional distress.

## COUNT SIX
### Negligent Misrepresentation

81. The allegations of paragraphs 1 through 58 are repeated and re-alleged as if set forth fully herein.

82. Simon's policies required that it consider MacDuff's requests for accommodation and take reasonable steps to accommodate his disability.

83. MacDuff relied on those policies in reaching out to his supervisor and to human resources regarding his disability.

84. Simon knew or should have known the representations in its policies were false.

85. MacDuff suffered pecuniary loss as a result of his reliance on that misrepresentation.

## COUNT SEVEN
### Breach of Duty of Good Faith and Fair Dealing

86. The allegations of paragraphs 1 through 58 are repeated and re-alleged as if set forth fully herein.

87. Inherent with his employment relationship with Simon was a duty of good faith and fair dealing.

88. Simon breached that duty of good faith and fair dealing when it failed to properly apply its policies and by assigning an unqualified supervisor to manage Clinton Crossings.

89. MacDuff's employment with the defendant was at will.

90. MacDuff's termination from his at will employment violated accepted and important public policies of the State of Connecticut and the federal government.

91. Connecticut General Statutes § 31-49, sets forth an aspect of Connecticut's public policy with respect to the employer's duty to its employees.

{!01989834.DOC; v.}                                11

92. The statutes states "[i]t shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his co-laborers and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person. The default of a vice-principal in the performance of any duty imposed by law on the master shall be the default of the master."

93. Simon's actions violated the public policy embedded in § 31-49 in that it failed to provide fit and competent co-laborers, in the person of Nathan, to MacDuff and failed to exercise reasonable care in the appointment or designation of his supervisor (vice-principal), that being Nathan.

## Count Four
### (Common Law Wrongful Termination)

94. The allegations of paragraphs 1 to 59 are repeated and re-alleged as if set forth fully herein.

95. MacDuff's employment with the defendant was at will.

96. MacDuff's termination from his at will employment violated accepted and important public policies of the State of Connecticut and the federal government.

97. Connecticut General Statutes § 31-49, sets forth an aspect of Connecticut's public policy with respect to the employer's duty to its employees.

98. The statutes states "[i]t shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his co-laborers and to exercise reasonable care in the appointment or

{!01989834.DOC; v.}   12

designation of a vice-principal and to appoint as such vice-principal a fit and competent person. The default of a vice-principal in the performance of any duty imposed by law on the master shall be the default of the master."

99.     Simon's actions violated the public policy embedded in § 31-49 in that it failed to provide fit and competent co-laborers, in the person of Nathan, to MacDuff and failed to exercise reasonable care in the appointment or designation of his supervisor (vice-principal), that being Nathan.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that this Court:

1.     Award compensatory and punitive damages as allowed by statute;

2.     Award attorney's fees and costs, including expert witness expenses;

3.     Grant plaintiff a trial by jury; and

4.     Grant such other and further relief as may be just and equitable.

                                    PLAINTIFF,
                                    TIMOTHY MACDUFF

                            BY: *Theodore W. Heiser*
                                    Theodore W. Heiser, ct23807
                                    Suisman, Shapiro, Wool, Brennan,
                                    Gray & Greenberg, P.C.
                                    2 Union Plaza, Suite 200
                                    P.O. Box 1591
                                    New London, CT 06320
                                    Tele. No.: (860)442-4416
                                    Fax No.: (860) 442-0495
                                    Email: theiser@sswbgg.com
                                    His Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIMOTHY MACDUFF, | * | Civil Action No. |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| | * | |
| | * | |
| SIMON MANAGEMENT ASSOCIATES II, LLC, | * | JUNE 1, 2020 |
| | * | |
| | * | |
| Defendant. | * | |

## JURY TRIAL CLAIM

The plaintiff, Timothy MacDuff, claims a trial by jury on all claims triable by jury.

PLAINTIFF,
TIMOTHY MACDUFF

BY: *Theodore W. Heiser*
Theodore W. Heiser, ct23807
Suisman, Shapiro, Wool, Brennan,
Gray & Greenberg, P.C.
2 Union Plaza, Suite 200
P.O. Box 1591
New London, CT 06320
Tele. No.: (860)442-4416
Fax No.: (860) 442-0495
Email: theiser@sswbgg.com
His Attorney

{!01989834.DOC; v.}                14

**EXHIBIT A**

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

<u>Timothy R. MacDuff</u>
**COMPLAINANT**

CHRO No. 2040087
vs.                                                                                    EEOC No. 16A201901821

<u>Simon Property Group, Inc.</u>
**RESPONDENT**

## **<u>RELEASE OF JURISDICTION</u>**

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

*Tanya A. Hughes*

**DATE:  <u>April 7, 2020</u>**                                        Tanya A. Hughes, Executive Director

cc: Complainant's Attorney: Theodore W. Heiser: theiser@sswbg.com
    Respondent: n/a
    Respondent's Attorney: Craig T. Dickinson: cdickinson@littler.com
    Case File

{!01990580.DOC; v.}
.